UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GILA RIVER INDIAN COMMUNITY, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>XAVIER BECERRA, Secretary,<br>U.S. Department of Health and Human<br>Services, *et al.*,<br><br>    Defendants. | Civil Action No. 21-cv-1401 (TSC) |

### MEMORANDUM OPINION

Plaintiffs Gila River Indian Community ("the Community") and Gila River Health Care Corporation ("GRHC") sued the United States and officials at the Department of Health and Human Services ("HHS") and its component agency the Indian Health Service ("IHS"). Plaintiffs seek unpaid reimbursements for healthcare services provided to veterans, and allege that their damages stem from Defendants' breach of a Compact of Self Governance between the Community and IHS. Compl. ¶¶ 8, 18, 45–47, ECF No. 1. Because Plaintiffs lack standing, the court will GRANT Defendants' Motion to Dismiss, ECF No. 22 ("Motion"), and dismiss this action.

### I. BACKGROUND

The United States provides health care to Native Americans as part of its "special trust responsibilities and legal obligations to Indians." 25 U.S.C. § 1602. It does so through IHS. 25 U.S.C. § 1661(c)(3); *see also Gila River Indian Cmty. v. United States Dep't of Veterans Affs.*, 2:16-cv-772-PHX-ROS, 2017 WL 2424721, at *1 (D. Ariz. Mar. 23, 2017). The Community and IHS entered a Compact of Self Governance in 2002, under which the Community assumed

responsibility to provide health care services to members of the Community and other eligible beneficiaries. ECF No. 24-2, Decl. of Andrew Brantingham, Ex. A ("Compact"), Art. III § 3; *see also* Compl., Ex. B at 3.[1] Under a self-determination contract like the Compact, "the federal government supplies funding to a tribal organization, allowing [the Tribe] to plan, conduct and administer a program or service that the federal government otherwise would have provided directly." *Rancheria v. Hargan*, 296 F. Supp. 3d 256, 260 (D.D.C. 2017) (quoting *FGS Constructors, Inc. v. Carlow*, 64 F.3d 1230, 1234 (8th Cir. 1995)).

The Community is a federally recognized Indian tribe that occupies the Gila River reservation in Arizona. Compl. ¶ 7. GRHC is a tribal organization wholly owned by the Community and is responsible for providing health care services pursuant to the Compact. *Id.* ¶ 9. The Community also provides health care services directly, without going through GRHC. *Id.* The health care Plaintiffs provide is financed through funding agreements (which the court has not been provided) between the Community and IHS. *Gila River Indian Cmty. v. United States Dep't of Veterans Affs.*, 899 F.3d 1076, 1077 (9th Cir. 2018); Compl. ¶ 8.

The Community and GRHC provide health care services to Indian and non-Indian veterans who are entitled to receive services from the Department of Veterans Affairs ("VA"). *Gila River*, 899 F.3d at 1077. Before 2010, care provided by the Community and GRHC to veterans was paid for through IHS. *Gila River*, 2017 WL 2424721, at *1. After 2010, the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119 (2010), included a provision that "allows tribal organizations, such as GRHC, to be reimbursed for health

---

[1] On a motion to dismiss for lack of subject-matter jurisdiction, the court may consider "any documents either attached to or incorporated in the complaint[,]" *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 & n.3 (D.C. Cir. 1997), as well as "materials outside the pleadings," *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017).

care provided to individuals eligible to receive care from the VA." *Gila River*, 2017 WL 2424721, at *1 (citing 25 U.S.C. § 1645(c)). Specifically, section 1645(c) provided that the "[IHS], Indian tribe, or tribal organization shall be reimbursed by the Department of Veterans Affairs or the Department of Defense . . . where services are provided through the [IHS], an Indian tribe, or a tribal organization to beneficiaries eligible for services from either such Department, notwithstanding any other provision of law."[2]

According to Plaintiffs, the VA opposed enactment of this provision and has resisted complying with it. Compl. ¶ 18. They contend that "IHS should have immediately sought reimbursement from [the] VA for itself and assisted self-governance tribes like the Community in doing the same." *Id.* ¶ 19. But "[i]nstead of providing reimbursements directly under the ACA, the VA developed template reimbursement agreements with the IHS, and it required recipients to enter into an agreement as a condition of receiving reimbursement." *Gila River*, 899 F.3d at 1077–78. The Community alleges that the "VA sought to include provisions in its template agreements specifically designed to limit tribal reimbursement rights guaranteed by the statute." Compl. ¶ 20. Those provisions included terms providing that "reimbursement would be limited to prospective services and would not be retroactive to the statute's effective date,"

---

[2] Plaintiffs and the VA disagree over section 1645(c)'s interpretation. Plaintiffs believe that "shall be reimbursed" cannot reasonably be read "to require reimbursement only if agreed to by VA." Compl. ¶ 28. Plaintiffs' prior suit against the VA provides the VA's interpretation:

> Relying on the new statutory provision, GRHC sought reimbursement from the VA for that care. The VA refused to reimburse GRHC, claiming § 1645(c) is not self-executing. In the VA's view, § 1645(c) allows it to negotiate the terms whereby it will provide reimbursements to tribal organizations.

*Gila River*, 2017 WL 2424721, at *1. Section 1645(c) was amended in 2021 to "clarify the requirement of the Department of Veterans Affairs and the Department of Defense to reimburse the Indian Health Service" for certain health services. Proper and Reimbursed Care for Native Veterans Act, Pub. L. No. 116-311, 134 Stat. 4927 (2021); *see also* Compl. ¶ 33.

limiting reimbursement "to direct care services only," and excluding reimbursement for "non-Native veterans receiving care from the Tribal Plaintiffs." *Id.* ¶ 25.

Plaintiffs claim that IHS "initially opposed such limitations, and even submitted the dispute over interpretation of § 1645(c) to the Department of Justice ('DOJ')." *Id.* ¶ 20. But IHS "capitulated to VA's reimbursement terms before receiving guidance from DOJ," and eventually "endorsed" template agreements including the terms above. *Id.* ¶¶ 20, 21. The Complaint alleges that "IHS's complicity in VA's wrongful conduct directly affected the Community's ability to vindicate its rights" under section 1645(c) because once "IHS had already agreed to VA's national template agreement, VA insisted that the Community enter into the same compromise IHS had endorsed." *Id.* ¶ 25 (internal quotations omitted). "The Community disagreed with the limitations VA sought to impose." *Id.* ¶ 28. But the "VA refused to negotiate," allegedly "stating it had already resolved the scope of reimbursements" under section 1645(c) in its negotiations with IHS, and that the "agreement reached with IHS would define the Community's substantive rights." *Id.* ¶ 29.

Plaintiffs sued the VA, seeking a declaration that it had violated section 1645(c) and an injunction compelling the VA to retroactively provide the reimbursements at issue here. First Am. Compl. at 16, *Gila River Indian Cmty. v. United States Dep't of Veterans Affs.*, No. 2:16-cv-772-PHX-ROS (D. Az. July 11, 2016), ECF No. 12. The district court found it lacked jurisdiction and dismissed Plaintiffs' suit for failure to follow the jurisdictionally exclusive process required by the Veterans' Judicial Review Act. *Gila River*, 2017 WL 2424721, at *5. The Ninth Circuit affirmed on appeal. *See Gila River*, 899 F.3d at 1077. Plaintiffs now sue HHS and IHS, and state that they do not allege any cause of action against the VA. Opp. to Defs.' Mot. ("Opp.") at 9, ECF No. 24.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must establish that the court has subject matter jurisdiction over its claim. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  The court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  But the court must "disregard any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations within the complaint," *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017), and must not "accept inferences that are unsupported by the facts set out in the complaint," *Arpaio*, 797 F.3d at 19. *See also Austin-Spearman v. AARP & AARP Servs. Inc.*, 119 F. Supp. 3d 1, 8 (D.D.C. 2015) (the court "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions."). Because the court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," the factual allegations in the Complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (cleaned up).

## III.     ANALYSIS

Plaintiffs claim they are owed more than $2.5 million in reimbursements for healthcare services they provided to veterans between 2013 and 2018, and that Defendants' failure to consult with and advocate for them in the course of negotiations with the VA caused the VA to deny these reimbursements.  Compl. ¶¶ 43, 47; Opp. at 1, 24.  The Community and GRHC

broadly allege that Defendants ignored tribal consultation and federal trust responsibilities as well as specific duties under the Compact when IHS entered into template agreements with the VA. Compl. ¶¶ 13, 35–41. The Complaint brings one count for breach of contract and alleges that "Plaintiffs have been wrongfully deprived of reimbursements" totaling $2,581,104.62 "[a]s a direct result of IHS's breaches." *Id.* ¶ 47. Defendants have moved to dismiss for lack of jurisdiction and for failure to state a claim. Opp. at 1–2. They argue that Plaintiffs' dispute is with the VA and involves benefits determinations that cannot be decided by this court. Reply in Supp. of Mot. at 1, ECF No. 25.

Defendants raise several jurisdictional arguments, including that Plaintiffs lack standing and that this court lacks subject matter jurisdiction because veterans' benefits determinations are subject to the exclusive jurisdiction of the Court of Appeals for Veterans Claims and the Federal Circuit. "[S]ubject-matter jurisdiction necessarily precedes a ruling on the merits," but "the same principle does not dictate a sequencing of jurisdictional issues." *Manning v. Esper*, 12-cv-1802-CKK, 2019 WL 281278, at *8 (D.D.C. Jan. 22, 2019). Because Defendants' jurisdictional arguments resolve the Motion, the court will not reach Defendants' argument that the Complaint fails to state a claim.

In order to establish standing, the Community and GRHC must allege a "concrete and particularized" injury that is "fairly traceable to the challenged action of the defendant" and "likely" to be "redressed by a favorable decision." *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). On a motion to dismiss, "the plaintiff is required only to state a plausible claim that each of the standing elements existed at the time the complaint was filed." *Barker v. Conroy*, 921 F.3d 1118, 1124 (D.C. Cir. 2019) (cleaned up).

A.      **Injury**

Neither side contests that Plaintiffs have stated a sufficiently concrete injury, but before the court can assess who caused the injury, "it must first examine what those injuries actually are." *Black v. LaHood*, 882 F. Supp. 2d 98, 103 (D.D.C. 2012). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotations omitted). Economic harm is a "canonical example of injury in fact sufficient to establish standing," *Austin-Spearman*, 119 F. Supp. 3d at 8 (cleaned up), but to ascertain a plaintiff's injury, the court looks to the "harms set forth in the Complaint," *Black*, 882 F. Supp. at 103. *See also Oglala Sioux Tribe v. U.S. Army Corps of Eng'rs*, 537 F. Supp. 2d 161, 167–68 (D.D.C. 2008) (examining injury stated in each claim for relief).

The Community repeatedly characterizes its harm as the deprivation of critical healthcare funding. It alleges that "IHS's complicity in VA's wrongful conduct directly affected the Community's ability to vindicate its rights under § 1645(c)." Compl. ¶ 25. The Community claims that IHS's endorsement of the VA's template agreements "improperly limited the Tribal Plaintiffs' ability to obtain reimbursement" and "wrongfully impeded the Tribal Plaintiffs' ability to access a critical source of supplemental funding from VA." *Id.* ¶¶ 38, 40. "As a direct result of IHS's wrongful conduct, the Tribal Plaintiffs were deprived of significant reimbursements that should have been paid under § 1645(c)," an amount "believed to be in excess of $2,581,104.62." *Id.* ¶¶ 43, 47. Plaintiffs must establish standing "under the theory upon which they based their claims for relief," and therefore must show that IHS and HHS, and not the VA, caused their only stated injury— the unpaid reimbursements they claim. *Gill v. Whitford*, 585 U.S. 48, 65 (2018).

B.     **Causation**

Plaintiffs fail to establish standing because they have not plausibly alleged that IHS's actions caused the injury pleaded in the Complaint: the VA's withholding of $2,581,104.62 in reimbursements.

Defendants argue that Plaintiffs cannot show that their injury is "fairly trace[able] to" IHS or HHS's conduct because the Complaint does not allege that either agency failed to pay amounts promised under the Compact. *Lujan*, 504 U.S. at 560; Mot. at 17. They contend that Plaintiffs instead "make overly tenuous allegations about IHS's involvement in the 'VA's unlawful conduct'" and ask the court to "engage in impermissible speculation" about the "role, if any, that IHS played in the VA's decisions." Mot. at 17–18. Plaintiffs counter that IHS's conduct placed them "in a worse position in regard to [the] VA than Plaintiffs would have enjoyed if Defendants had honored their contractual commitments." Opp. at 24. Plaintiffs claim that the Complaint's allegation that "[a]s a direct result of IHS's breaches, the Tribal Plaintiffs have been wrongfully deprived of reimbursements" is sufficient to satisfy the traceability requirement. *Id.* at 23–24. "In other words," Plaintiffs contend, they were "deprived of reimbursements they likely would have otherwise received, because IHS embraced a position vis-a-vis VA that was contrary to Plaintiffs' interests." *Id.* at 24.

The agencies' position better captures the causation standard for Article III standing. While Plaintiffs are correct that the causation standard "is not particularly demanding," *Garnett v. Zeilinger*, 485 F. Supp. 3d 206, 218 (D.D.C. 2020), it requires plaintiffs to show that their injury is "fairly traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up). "Generally," this is a "but for" test: "if the injury would occur regardless of the challenged action—say, because some separate action would independently cause it in full—then the fair-

traceability test is not met." *Cherokee Nation v. United States Dep't of the Interior*, 643 F. Supp. 3d 90, 106 (D.D.C. 2022) (citing *Delta Constr. Co. v. EPA*, 783 F.3d 1291, 1297 (D.C. Cir. 2015)). Traceability "requires no more than de facto causality." *Dep't of Com. v. New York*, 588 U.S. —, 139 S. Ct. 2551, 2566 (2019) (quoting *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.)). It does not require a showing of proximate cause. *Attias v. Carefirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017). But it *does* require a reasonable showing "that 'but for' defendant's action the alleged injury would not have occurred." *Ipsen Biopharmaceuticals, Inc. v. Becerra*, No. 22-cv-860-DLF, 2023 WL 3319366, at *5 (D.D.C. May 8, 2023) (quoting *Cmty. Nutrition Inst. v. Block*, 698 F.2d 1239, 1248 (D.C. Cir. 1983), *rev'd on other grounds*, 467 U.S. 340 (1984)); *see also Honeywell Int'l, Inc. v. EPA*, 705 F.3d 470, 472 (D.C. Cir. 2013).

Plaintiffs have not crossed that threshold because the court cannot infer that they would have received reimbursements from the VA but for IHS's breach of its Compact duties. Instead, the VA's denial of reimbursements flows from the interpretation of section 1645(c) it developed before it began negotiating with IHS. The Complaint also allows the court to infer that the VA would have refused to reimburse regardless of whether IHS breached the Compact. And the Complaint's allegations to the contrary are conclusory.

    i.    <u>The VA determined it would deny the contested reimbursements before it negotiated with IHS.</u>

The Complaint alleges that the VA concluded it could withhold the contested reimbursements before it negotiated with IHS and that "IHS accepted *VA's decision* to withhold all reimbursements pending the development" of the template agreement. Compl. ¶ 19 (emphasis added). It further alleges that the VA entered into negotiations with the agencies with its own interpretation and agenda: the "VA sought to include provisions in its template agreements specifically designed to limit tribal reimbursement rights guaranteed by the statute."

*Id.* ¶ 20. The Complaint also acknowledges that "IHS initially opposed such limitations, and even submitted the dispute" over section 1645(c)'s interpretation to DOJ. *Id.* Put differently, IHS raised its disagreement regarding the VA's interpretation because the VA put forward its own *pre-existing* position. But IHS ultimately "capitulated to *VA's* reimbursement terms before receiving guidance," and "endorsed template agreements *VA* sought to impose on tribes." *Id.* ¶¶ 20–21 (emphases added).

Those allegations acknowledge that the VA's interpretation of section 1645(c)—which led it to deny the Community's claimed reimbursements—"predated the actions challenged in this suit." *Black*, 882 F. Supp. 2d at 105. A decision by a third party that predates the named defendants' challenged acts undermines the defendants' culpability for harm that flows from the third party's earlier decision. *See id.* at 104. In *Black*, plaintiffs challenged the Federal Highway Administration's ("FHWA") approval of a plan to convert Klingle Road in Northwest Washington into a multi-use trail. *Id.* at 100. Three years before the FHWA's approval of the conversion project, the D.C. City Council passed a law closing the contested portion of the road permanently to motor vehicles. *Id.* The court found that plaintiffs lacked standing to sue the federal defendants because their complaint tied their harms to the closing of Klingle Road— but the D.C. City Council, not FHWA, closed Klingle Road. *Id.* at 104. Because the federal defendants were not involved in that decision, plaintiffs' injuries "clearly fail[ed] the causation requirement, as it was not the challenged conduct of Defendants—but rather the decision of the D.C. Council (which is, significantly, not named as a Defendant)—that led to the prohibition." *Id.* at 104; *see also Freedom Republicans, Inc. v. Fed. Election Comm'n*, 13 F.3d 412, 418–19 (D.C. Cir. 1994) (Republican Party's practice of allocating delegates in accordance with Republican voting strength preceded public convention funding by fifty-eight years and

Case 1:21-cv-01401-TSC   Document 29   Filed 05/31/24   Page 11 of 20

historical data supported nonmonetary motives, such that plaintiffs could not show that FEC's continued funding of party activities caused Republican Party's allegedly discriminatory practices of selecting delegates).

Fairly read, the Complaint alleges that the VA's interpretation of section 1645(c) ran counter to Plaintiffs' from the start. IHS's failure to advocate for Plaintiffs was not the genesis of the VA's position that it did not owe the claimed reimbursements, and nothing in the Complaint leads the court to infer that it was IHS or HHS's actions—as opposed to the VA's—that caused Plaintiffs' harm. Plaintiffs attempt to augment their pleadings in their opposition brief, arguing that they were "deprived of reimbursements they likely would have otherwise received" because "IHS embraced a position vis-à-vis [the] VA that was contrary to Plaintiffs' interests." Opp. at 24. But the allegation that Plaintiffs "likely would have otherwise received" reimbursements if not for the agencies' breach does not appear in the Complaint, and Plaintiffs "cannot reinforce their complaint by creatively recasting and embellishing the allegations of their complaint in their opposition brief." *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 173 (D.D.C. 2004). Like the FHWA, the agencies took a position consistent with a third party's earlier action (here, the VA's interpretation of section 1645(c) and development of template agreements reflecting its interpretation). But the VA is "ultimately responsible for any injuries arising from" its decision. *Black*, 882 F. Supp. 2d at 105. Defendants are not.

  ii. *The VA's interpretation, not IHS's breaches of its Compact duties, caused Plaintiffs' harm.*

Second, the Complaint allows the court to infer that the VA would have refused to reimburse even without IHS's Compact breaches. "By definition, any injury that would have occurred regardless of" a defendant's acts "is not caused by" that defendant's action. *Indigenous People of Biafra v. Blinken*, 639 F. Supp. 3d 79, 86 (D.D.C. 2022). The same allegations that

Page 11 of 20

lead the court to conclude that the VA's interpretation predated IHS's breaches illustrate that the VA would likely have imposed its interpretation on Plaintiffs even without IHS's cooperation. Specifically, allegations that the "VA opposed enactment" of section 1645(c), Compl. ¶ 18, "resisted complying with it," *id.*, and "sought to include provisions in its template agreements specifically designed to limit tribal reimbursement rights guaranteed by the statute," *id.* ¶ 20, "lend support to the contrary proposition that any injuries inflicted" on the Community "would have occurred even in the absence of the challenged conduct," *Biafra*, 639 F. Supp. 3d at 86. *See also Bennett v. Spear*, 520 U.S. 154, 169 (1997) ("it does not suffice if the injury complained of is the result of the *independent* action of some third party not before the court") (cleaned up).

Courts regularly review the timeline of events alleged in a complaint to determine whether plaintiffs have established causation. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff*, 23 F.4th 1028, 1034 (D.C. Cir. 2022); *see also Austin-Spearman*, 119 F. Supp. 3d at 9 (evaluating chronology alleged in plaintiff's complaint to determine standing). In *Schiff*, a medical association alleged that a Congressman who wrote to several technology and social media companies before and during the COVID-19 pandemic to express concern about vaccine-related misinformation "prompted the technology companies to disfavor and deprioritize its vaccine content" and reduced traffic to the association's website. 23 F.4th at 1030. The complaint alleged that Congressman Schiff's outreach was a "substantial factor motivating" the companies' actions to deprioritize vaccine content. *Id.* at 1031. But the companies' response to the inquiries undermined "any possibility that the companies acted at Representative Schiff's behest in particular": one responded that "we are and *have been* demonetizing anti-vaccination content," and other allegations in the complaint acknowledged that several of the social media

companies' actions occurred before Representative's Schiff's challenged conduct. *Id.* at 1034 (emphasis in original).

As described above, the timeline in the Complaint illustrates that the VA settled on terms adverse to Plaintiffs' interest before it began negotiations, and indicates the VA would have insisted on its terms with or without the agencies' "capitulation" to their template agreement. Compl. ¶ 21. Plaintiffs nowhere allege that IHS's "capitulat[ion] to VA's reimbursement terms before receiving guidance from DOJ" enabled the VA to impose its terms on the Community. *Id.* ¶ 20. Instead, Plaintiffs allege that the VA—not IHS—sought to include the contested provisions before it began negotiations with IHS. *Id.*; *see supra* at 9–10. And they allege that the VA—not IHS—sought to impose the template agreements with VA's predetermined terms on the tribes. Compl. ¶ 21. Plaintiffs nonetheless make two allegations that come close to clearing the traceability standard's low bar. They claim that the "VA refused to negotiate" with the Community and stated that "it had already resolved the scope of reimbursements . . . in its negotiations with IHS" and the "agreement reached with IHS would define the Community's substantive rights." *Id.* ¶ 29. And they allege that "IHS's complicity in VA's wrongful conduct directly affected the Community's ability to vindicate its rights" under section 1645(c) because once "IHS had already agreed to VA's 'national template agreement,' VA insisted that the Community enter into the same compromise IHS had endorsed." *Id.* ¶ 25; *see also* Opp. at 23–24.

The D.C. Circuit found similar allegations inadequate in *Schiff*. Even though the plaintiff medical association alleged that Congressman Schiff's letters were "a substantial factor motivating the companies' actions to suppress vaccine-related information," the Circuit found that allegation to be "exactly the kind of allegation the Supreme Court rejected in *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544 (2007)." *Schiff*, 23 F.4th at 1034 (cleaned up). "After all, 'a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, the allegation in *Schiff* was "merely consistent with" the sort of "coordinated action that would supply a causal link between Representative Schiff's statements and the technology companies' actions," and it was far more plausible that the companies' actions were a "response to widespread societal concerns about online misinformation" rather than "one legislator's inquiry." *Id.* at 1034–35.

Here, Plaintiffs allege that "IHS's complicity in VA's wrongful conduct directly affected" their ability to negotiate with the VA because the VA stated that its agreement with IHS "would define the Community's substantive rights." Compl. ¶¶ 25, 29. These allegations are similarly "consistent with" coordinated action, but do not plausibly suggest that IHS was a but-for cause of the VA's refusal to negotiate. And Plaintiffs do not even allege that IHS's failure to negotiate or otherwise satisfy its Compact duties were "a substantial factor motivating" the VA's actions. *Schiff*, 23 F.4th at 1034; *cf. In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 60 (D.C. Cir. 2019). Furthermore, finding that either of these allegations satisfy traceability would require two analytical leaps. First, that the VA would not have developed template agreements that impermissibly limited reimbursement rights if IHS had satisfied its Compact duties. And second, even if IHS had fully performed its duties *and* convinced the VA to alter its interpretation, the VA would have used the same templates it negotiated with IHS in its negotiations with Plaintiffs. But "theory and conjecture are not enough to support standing," and the "Supreme Court has repeatedly rejected the notion that a finding of standing may be based on such 'unadorned speculation.'" *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 944 (D.C. Cir. 2004) (quoting *Simon*, 426 U.S. at 44).

Read in light of *all* the factual allegations in the Complaint, neither allegation above allows the court to infer that the VA would have provided the contested reimbursements had IHS fully performed its duties under the Compact. Plaintiffs' statement that the agencies' breaches "directly affected" the Community's "ability to vindicate its rights" does not give rise to an inference that the VA pressured the Community to agree to the IHS-endorsed template *because* IHS endorsed the VA's interpretation. Compl. ¶ 25. Put differently, the fact that the template agreement encompassed the same terms the VA had independently and previously selected does not mean that the VA imposed those terms on Plaintiffs *because* IHS agreed to them. That conclusion ignores the more plausible inference that the VA extracted these concessions from IHS because it had already embraced an interpretation of the statute. And that the VA had already formed its interpretation of section 1645(c) is the most plausible conclusion given the allegations detailed above. *Supra* at 9–11.

For the same reason, the remaining factual allegations in the Complaint do not support an inference that the VA refused to negotiate with Plaintiffs and ultimately refused to reimburse the Community in part *because* IHS agreed to its template. Compl. ¶ 29; *see Arpaio*, 797 F.3d at 19 (court must not "accept inferences that are unsupported by the facts set out in the complaint"). It is more plausible that the VA imposed the same interpretation on both IHS and Plaintiffs that it always intended to impose on any reimbursement-seeker, and the court therefore cannot conclude it is "substantially probable" that "the challenged acts of the defendant, not of some absent third party, will cause the particularized injury of the plaintiff." *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996). A fair reading of the Complaint indicates that it was the VA's interpretation, not IHS's failure to advocate for and consult with Plaintiffs before accepting the VA's template agreement, that caused the VA to deny the claimed reimbursements.

### iii. *The Complaint's remaining allegations are conclusory.*

Finally, the Complaint's remaining allegations to the contrary are conclusory. The Complaint alleges that Plaintiffs have been wrongfully deprived reimbursements from the VA "[a]s a direct result of IHS's breaches." Compl. ¶ 47. But Plaintiffs fail to allege "the manner in which" IHS's breach contributed to the VA's denial. *See Jones v. La. State Bar Ass'n*, 738 F. Supp. 2d 74, 80 (D.D.C. 2010), *aff'd*, 2011 WL 11025624 (D.C. Cir. Oct. 3, 2011). The Complaint's "wholly conclusory statement" that Defendants' actions deprived Plaintiffs of reimbursements is insufficient even at the pleading stage. *Id.*; *see also Gulf Coast Mar. Supply*, 867 F.3d at 128 (court must disregard legal contentions couched as factual allegations).

Had the Complaint alleged facts sufficient for the court to conclude that IHS was an "equally important player" in the VA's development of its interpretation of section 1645(c) and decision to deny the reimbursement, that might suffice. *Orangeburg, S.C. v. FERC*, 862 F.3d 1071, 1080 (D.C. Cir. 2017) ("It may be enough that the defendant's conduct is one among multiple causes.") (quoting 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Fed. Practice & Procedure § 3521.5 (3d ed. 2008)). Or, had Plaintiffs alleged that the VA could not have moved forward but for IHS's decision to "capitulate" before receiving guidance from DOJ, the inferences would lead in the other direction. Compl. ¶ 20. But the Complaint does not make those allegations and—aside from the allegations discussed above and the bare assertion that Plaintiffs were wrongfully deprived of reimbursements "[a]s a direct result of IHS's breaches," *id.* ¶ 47—instead indicates that the VA independently developed its theory, IHS "capitulated to it," and the VA forced its position as reflected in the template agreements on Plaintiffs. For the reasons above, the court cannot conclude that the VA's denial would not have occurred had IHS fully performed its duties under the Compact.

C.      **Redressability**

To establish their injury is redressable, Plaintiffs must plausibly allege that it is "substantially likely" they will "obtain relief that directly redresses the injury suffered." *Reed v. Goertz*, 143 S. Ct. 955, 960 (2023). The court assumes for purposes of standing that a plaintiff "will ultimately receive the relief sought." *Fla. Audubon Soc.*, 94 F.3d at 665. This prong focuses on the "connection between the alleged injury and the judicial relief requested," *West*, 845 F.3d at 1236, and is implicated "when the court's power to redress an injury caused by an illegal act is independently impaired," *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 658 (D.C. Cir. 2010). Although Defendants have not challenged redressability, they separately argue that neither IHS nor HHS funds are available to pay costs allocable to another federal program. Mot. at 19. If true, the court's ability to redress the Community's claimed injuries by ordering either agency to reimburse funds owed by the VA may be "independently impaired." *Shinseki*, 599 F.3d at 658. But the statute upon which the agencies rely does not apply to these funds, and the Supreme Court has held that nominal damages separately satisfy the redressability prong. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021).

Plaintiffs have alleged a substantial likelihood that their suit will afford relief that redresses their injury, though the court notes that their theory risks double recovery.[3] Neither

---

[3] Plaintiffs seek funds allegedly owed by the VA under section 1645(c)'s statutory regime from IHS and HHS. Plaintiffs' sole alleged injury is the VA's denial of "reimbursements that should have been paid under § 1645(c)." Compl. ¶ 43. No separate amounts promised by IHS under the Compact are challenged. Plaintiffs previously sought a court order that the language directing that tribal organizations "shall be reimbursed" by the VA is mandatory, not permissive, and covers the services for which Plaintiffs seek reimbursement. Compl. ¶¶ 17, 30; *see also Gila River Indian Cmty. v. Dep't of Veterans Affs.*, 899 F.3d 1076 (9th Cir. 2018). Should Plaintiffs ultimately succeed on their theory that the reimbursements they seek are mandatorily owed by the VA—whether through court order or in future negotiations with the VA—they will effectively receive double recovery. A party "cannot recover the same damages twice, even though the recovery is based on two different theories," but since

party has pointed to a statutory or other legal bar that would prevent the court from ordering the agency defendants to pay the Community's claimed reimbursements—which the court must assume the agencies will ultimately receive as contract damages—and there is no question that affording Plaintiffs the amount of lost reimbursements they seek would redress the harm caused by the VA's withholding of the reimbursements.

"Plaintiffs have standing to proceed against each defendant only to the extent that an order" compelling that defendant to take some action "would redress [Plaintiffs'] alleged injuries." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 9 (D.D.C. 2022) (quotation omitted). The agencies argue that they cannot be ordered to reimburse the lost reimbursements because their funds are not available to cover services provided to individuals who are eligible to receive services through the VA, but instead receive them from Plaintiffs. Mot. at 19. Recall that section 1645(c) provides that a tribal organization "shall be reimbursed by the Department of Veterans Affairs or the Department of Defense (as the case may be) where services are provided" through the tribal organization "to beneficiaries eligible for services from either such Department . . . ." 25 U.S.C. § 1645(c). The agencies argue that they are barred from reimbursing these costs because "IHS/HHS appropriation is not available to pay costs allocable to another Federal program." Mot. at 19.

The bar Defendants cite is 25 U.S.C. § 450j-2 (recodified at 25 U.S.C. § 5326), but that statute provides that "no funds appropriated by this or any other Act shall be available *for any contract support costs or indirect costs* associated with any . . . funding agreement entered into between an Indian tribe or tribal organization and any entity other than the Indian Health

---

Plaintiffs have not yet received the sought-after funds from the VA, the court does not perceive the *risk* of double recovery to prevent a finding of redressability at this time. *Xereas v. Heiss*, 987 F.3d 1124, 1134 (D.C. Cir. 2021).

Service." 25 U.S.C. § 5326 (emphasis added). Section 5326 applies to "contract support costs" and "indirect costs," terms of art for expenses stemming from overhead a tribe incurs in connection with operating a federal program (such as special auditing or other financial management costs and workers' compensation insurance), and indirect costs (such as rent, utilities, and payroll for management and administration) that a tribe incurs in administering its programs, neither of which are at issue here. *See* 25 U.S.C. § 5304(f) (indirect costs); 25 U.S.C. § 5325(a)(2) (contract support costs); *see also Cherokee Nation of Okla. v. Leavitt*, 543 U.S. 631, 634 (2005) (describing each). Defendants have not identified a statute that specifically bars them from reimbursing the baseline funds provided under the terms of the self-determination contract. *See Tunica-Biloxi Tribe of La. v. United States*, 577 F. Supp. 2d 382, 388 (D.D.C. 2008) (contrasting this baseline amount with contract support costs). Though it would defy logic to find that IHS could pay amounts owed by the VA, but is statutorily barred from paying the indirect or contract support costs on the same amount, Defendants have not shown that the court cannot order them to pay Plaintiffs' requested relief. *Cf. Al-Gharawy*, 617 F. Supp. 3d at 9.

Second, even if the agencies were correct that they are barred from paying funds owed by the VA, a "request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Uzuegbunam*, 141 S. Ct. at 802. The words "nominal damages" do not appear in the Complaint, but Plaintiffs' prayer for relief includes "damages in an amount to be determined at trial." Compl. ¶ 49(a). Plaintiffs do not need to use specific language at this stage of the case: "Nominal damages are not a consolation prize for the plaintiff who pleads, but fails to prove, compensatory damages," instead, they are "awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory damages." *Uzuegbunam*, 141 S. Ct. at 800.

And final judgments "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." *Aref v. Lynch*, 833 F.3d 242, 267 (D.C. Cir. 2016) (quoting Fed. R. Civ. P. 54) (suggesting in dicta that including "a broad prayer for relief" is sufficient to state a claim for nominal damages). Because "breach of contract is a concrete injury, redressable through nominal damages," the court finds that Plaintiffs have established the remaining two elements of standing. *Attias v. CareFirst, Inc.*, No. 15-cv-882-CRC, 2024 WL 1344401, at *6 (D.D.C. Mar. 29, 2024).

Although the Complaint presents a close call, IHS and HHS's alleged complicity is insufficient to show causation on this record. Because the conduct that caused Plaintiffs' alleged injuries was initiated before the Defendants' alleged breach and would have occurred without the Defendants' breach, Plaintiffs' claimed injuries are not attributable to Defendants' conduct.[4]

### IV. CONCLUSION

For the foregoing reasons, the court will GRANT Defendants' Motion to Dismiss, ECF No. 22, without prejudice. An Order will accompany this Memorandum Opinion.

Date: May 31, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[4] Plaintiffs state that they "seek leave to amend" their Complaint to cure any deficiencies "in the event the Court were to conclude Plaintiffs' factual allegations are insufficient to establish standing or subject matter jurisdiction." Opp. at 30. Courts "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Although "Rule 15(a)—even as liberally construed—applies only when the plaintiff actually has moved for leave to amend the complaint; absent a motion, there is nothing to be freely given," the court will grant Plaintiffs 45 days to move to amend their Complaint. *Schmidt v. United States*, 749 F.3d 1064, 1069 (D.C. Cir. 2014) (citation omitted).